IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LAWRENCE NORTHERN,

                              Plaintiff,

     v.                                                  OPINION & ORDER

KOREEN FRISK,                                       13-cv-367-jdp

                              Defendant.

---

Plaintiff Lawrence Northern injured his Achilles tendon playing basketball at the New Lisbon Correctional Institution (NLCI).[1] He brings a claim that defendant Koreen Frisk (a nurse at NLCI) violated his Eighth Amendment rights by failing to properly examine his Achilles and provide him with pain medication after he complained of pain following the injury.

Frisk has filed a motion for summary judgment, Dkt. 51. After considering the parties' briefing on the motion and their disputes of fact over the events in question, I conclude that a reasonable jury could conclude that Frisk acted with deliberate indifference by failing to examine Northern and provide him with pain medication. Therefore, I will deny the motion for summary judgment.

Also, Northern has filed a motion to amend his complaint to include malpractice claims against Frisk and two new proposed defendants. Dkt. 65. As discussed below, I conclude that Northern may amend his complaint to bring his malpractice claim against Frisk, but deny his request to add new defendants to the case.

---

[1] Northern is currently incarcerated at the Jackson Correctional Institution.

OPINION

A.  **Proposed amended complaint**

Northern, through counsel, filed a motion to amend the complaint to include state law medical malpractice claims against defendant Frisk and two new defendants discussed below: Nurse Adrienne Baumgart and Dr. Kenneth Adler. Northern says that these additions are not burdensome because he has already deposed these defendants so no new discovery is necessary, and the "state law claims arose from the exact same facts as his federal claims." Dkt. 75, at 1. Frisk opposes, stating that it is too late to amend the complaint, for both statute of limitations and fairness reasons, and that there is no independent basis for federal jurisdiction over the proposed new defendants.

I conclude that jurisdiction is not a problem for Northern. All of the alleged negligent acts are closely related to Northern's Eighth Amendment claim about treatment for his Achilles injury. *See* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

Under Federal Rule of Civil Procedure 15(a)(2), I should "freely give leave when justice so requires." But justice does not require allowing Northern to bring two new defendants into the fold at this late juncture, even assuming his claims against them do not run afoul of the three-year statute of limitations for medical malpractice claims. *See* Wis. Stat. §§ 893.54, 893.55 (The amended complaint is dated April 1, 2016, and Northern's interactions with at least Frisk and Baumgart took place before April 1, 2013.). I conclude

2

that it is simply too late for Northern to attempt to his amend his complaint to expand the case to include new defendants.

Recruited counsel has been representing Northern since late April 2015, and they did not move to amend the complaint until 11 months later, after Frisk had already filed a motion for summary judgment at the dispositive motions deadline. Northern argues that he did not know the extent of his claims until depositions were taken of all the proposed defendants in late January 2016, but I will not credit this line of argument given all the other knowledge of the claims Northern had well before the dispositive motions deadline, including the medical records documenting treatment, Northern's personal knowledge of his interactions with defendants, and an expert on board who already specifically opined about substandard care provided by Frisk and Baumgart.[2] Northern argues that his counsel's need to balance their commercial caseload with their pro bono commitment in this case provides another reason for lenience in considering the motion to amend. Although I recognize and continue to appreciate counsel's efforts in taking on representation of Northern with no guarantee of recompense, it would still be unfair to the state to bring in new defendants at this late date.

On the other hand, I am inclined to grant Northern's motion as it pertains to his proposed malpractice claim against Frisk. This claim is so similar to the existing Eighth Amendment claim that the state faces only a minimal burden in preparing to litigate it. And the three-year statute of limitations discussed by the parties does not appear to be a problem,

---

[2] Northern also argues that it would be unfair to deny his motion to amend seeing as the court already allowed Frisk a reprieve from the expired original dispositive motions deadline when the schedule was reset following the granting of Northern's motion for recruitment of counsel. *See* Dkt. 34. But as I discuss below, Frisk ultimately does not benefit by this second bite at the apple.

3

as the malpractice claim relates back to the events of the original complaint. Fed. R. Civ. P. 15(c)(1)(B).

No matter how closely related the claims, Frisk should have an opportunity to file a dispositive motion on the malpractice claim if she so wishes. I will give Frisk a short time to explain whether she will be filing such a motion, and explain how much time she needs to prepare it. Once Frisk has informed the court of her next step, I will direct the clerk of court to schedule a conference with Magistrate Judge Stephen Crocker to hash out a trial date and associated pretrial deadlines.

**B. Motion for summary judgment**

    **1. Findings of fact**

The following facts are drawn from the parties' proposed finding of fact and supporting evidentiary materials, and they are undisputed unless noted otherwise.

Plaintiff Lawrence Northern was an inmate at the New Lisbon Correctional Institution (he has since moved on to the Jackson Correctional Institution). Defendant Koreen Frisk is a nurse employed by the Wisconsin Department of Corrections at NLCI.

    **a. Injury and initial treatment**

On January 25, 2013, Northern injured his left Achilles tendon while playing basketball. Following the injury, he was taken to the Health Services Unit where he was seen by Nurse Baumgart (a non-defendant). Northern informed Baumgart that he heard an audible "pop" from his ankle at the time of the injury. He also told Baumgart that his pain level was at a 3. Baumgart noted slight swelling but no deformity and no bruising. She diagnosed Northern with an "alteration in comfort." She prescribed "PRICE"—protection, rest, ice, compression, and elevation—and provided him with an Ace wrap and ibuprofen. A

few days later, Northern submitted a health service request (HSR), stating that his Achilles tendon was "still swollen [and] hurts." Dkt. 54-1, at 5.

Northern was given a February 4 appointment with non-defendant Nurse Johnson, but the progress notes show that he did not show up on time for that appointment. He arrived a couple of hours later and argued that he was not given proper notice. Northern left the Health Services Unit without receiving treatment.

Northern submitted another HSR, stating again that he was "still experiencing pain" and that his foot has not been reexamined since he was seen on January 25. *Id*. at 16. He was given an appointment on February 12.

### b. Follow-up appointments with Frisk

On February 12, 2013, Northern saw Frisk for his injury. Frisk observed Northern walk in with a slight limp. He was not wearing his Ace wrap and his shoes were untied. Frisk began the appointment by reading from Northern's medical chart, which included notes from his appointment with Baumgart. Reading the chart, Frisk saw that Northern had previously described his pain level as a 3 and that Baumgart diagnosed him with an alteration in comfort. Frisk saw that Baumgart prescribed PRICE, and provided Northern with an Ace wrap and ibuprofen.

Northern states that throughout the appointment, Frisk did not manipulate his ankle, nor did she perform any tests on it, or even take his boots off. She also did not ask him what level of pain he was experiencing. Instead, Northern claims that Frisk asked only if Northern was experiencing any more swelling than any of the previous days, to which Northern replied no. Dkt. 68, ¶¶ 83-84. Northern says he answered this way because his swelling was the same as before, not because it had subsided. Frisk claims that she "examined" Northern's ankle,

5

Dkt. 54-1, at 8, even though she does not remember if she manipulated it. Dkt. 62, at 20. According to Frisk's notes, Frisk examined Northern's ankle and found no swelling or redness. Dkt. 54-1, at 8. Her notes also state that she asked Northern if he had been elevating his ankle and putting ice on it and that she stressed to Northern the importance of wearing the Ace wrap and keeping his shoes tied. *Id.* The notes states that Northern indicated to Frisk that he understood. *Id.*

Northern claims that during the appointment, he told Frisk that he was in severe pain. He states that he then asked her for additional ibuprofen because he had run out, but Frisk told him to buy it from the canteen. Dkt. 68, ¶ 87. Northern also asked to see a doctor, for walking aides, and to be moved to a lower tier cell and bunk. Frisk, however, stated that "there was nothing [she] could do," telling him to "tough it out." Dkt. 68, ¶ 96.

Northern claims that following Frisk's appointment, NLCI's canteen schedule prevented him from obtaining ibuprofen for seven days. The parties do not dispute that at NLCI, canteen orders are placed Sundays, and orders are made available on Mondays. Northern's February 12 appointment with Frisk was on a Tuesday, and the following Monday the canteen was closed for President's Day, so he would not have been able to buy medication from the canteen until the following Tuesday. On February 13, Northern bartered for ibuprofen by trading food to another inmate.

More than a month later, Northern filed another HSR, stating that a knot had now formed on his Achilles tendon and that his Achilles "continuously causes severe pain." Dkt. 54-1, at 10. On March 28, Frisk, along with nursing student RyAnne Inglett, saw Northern. Inglett examined Northern by placing her hands on the knot and physically manipulating the Achilles tendon. Inglett then stated that there was something wrong with

6

the Achilles tendon. Dkt. 68, ¶ 110. Frisk, disagreed, stating that the dent in the Achilles tendon was an indentation from the sleeve Northern was wearing. Dkt. 68, ¶ 112. Northern responded by stating that the dent in the Achilles tendon and the swelling had existed for months. Dkt. 68, ¶ 113. Northern then asked if he could see a doctor and for walking aids. Northern states that he left the appointment not knowing if he would see a doctor. The treatment notes from that appointment show that Northern was referred to Dr. Kenneth Adler to be seen the following week.

    c. **Further treatment**

On April 1, 2013, Northern saw Adler. Adler examined Northern and concluded that Northern probably had a partial tear of his Achilles tendon. As a result, Adler referred Northern to an orthopedic specialist. Northern asked Adler for walking aides and to be moved to a lower tier cell and bunk. Adler stated that he would look into it. On April 28, 2013, Northern was approved for a lower tier cell and bunk.

In May 2013, Dr. Thomas Grossman performed surgery on Northern. After having visually observed the Achilles at surgery, Grossman diagnosed Northern with a "partial tear healed with adhesions."

    d. **Expert report**

Northern brings an Eighth Amendment claim against Frisk, alleging that her failure to provide him with adequate medical care for his injured Achilles tendon qualifies as deliberate indifference. In support of his Eighth Amendment claim, Northern provides the expert opinion of Dr. Brian Toolan, an orthopedic surgeon. Toolan states that when "a nurse is presented with [complaints of pain, swelling, and an inability to use the injured limb][,] . . . [i]t is standard procedure to examine the Achilles tendon by palpation to feel a gap in the

7

tendon, perform a Thompson test and inspect the ankle for loss of resting equinus." Dkt. 48, at 5. A "Thompson test" is a diagnostic exam used on the lower limb to test for a possible rupture to the Achilles tendon.

Toolan states that Baumgart's failure to "examine [Northern] for the presence of an Achilles tendon rupture . . . informs [his] opinion that [Baumgart] was deliberately indifferent." *Id.* at 7. In the same vein, Toolan states that "Frisk's failure to examine [Northern] for the presence of an Achilles tendon rupture . . . informs [his] decision that [d]efendant was deliberately indifferent." *Id.*

2. Analysis

To succeed on a motion for summary judgment, the moving party must "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). When considering a motion for summary judgment, a court must view all reasonable inferences from the facts, "in a light most favorable to the nonmoving party." *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). But if the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

a. Physical injury

Northern brings an Eighth Amendment claim against Frisk for failing to provide him with adequate medical care for his injured Achilles tendon. There are really two aspects to

this claim: (1) the treatment for the injury itself; and (2) treatment for the accompanying pain. I will address these aspects separately.

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). At least initially, both parties agree that Northern's injured Achilles tendon was a serious medical need. The parties dispute whether the injury was a complete tear (what I take them to mean when they say "rupture") or a partial tear, but the parties seem to agree that he injured his Achilles and that some type of treatment was appropriate.

Unlike many prisoner medical care cases where a prisoner alleges that medical staff completely failed to treat an injury, Frisk did provide *some* treatment for Northern's Achilles. Thus, the central question is whether Frisk's actions were "such a substantial departure from accepted professional judgment, practice, or standard, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). Negligence—even gross negligence—is not enough to show deliberate indifference. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012).

The parties' versions of the February 12, 2013 appointment differ substantially. Frisk gives reasons for thinking that Northern's injury was simply not that serious: Baumgart had already diagnosed the problem as an "alternation in comfort" as opposed to a tear, Northern had missed a previous appointment,[3] walked with only a slight limp, was not wearing his Ace wrap, and did not complain of pain. And Frisk says that she noticed no swelling or redness. If

---

[3] Northern disputes the circumstance sunder which he missed the previous appointment, but I include that fact to show one of Frisk's stated rationales for applying conservative treatment to a minor injury: Northern himself was not taking the injury seriously because he was missing his scheduled appointments.

all of these points were undisputed, I would likely grant summary judgment to Frisk because no reasonable jury could conclude that she was deliberately indifferent given so many indications that Baumgart's previous diagnosis was correct and Northern seemed to be on his way to recovery.

But Northern's version of the story is quite different. He says that he complained of severe pain—almost three weeks after the injury—and yet Frisk did next to nothing to assess his condition. According to Northern, he kept his boots on the entire time, and Frisk did not visually or physically examine his foot and ankle, in apparent violation of prison nursing protocols[4] (the "Ankle/Foot Injuries Nursing Protocol" says to "palpate and examine" and "observe" the site of the injury, Dkt. 54-2, at 1) and Dr. Toolan's expert opinion about how to diagnose this type of injury.[5]

Although violations of state procedures (or in this case, nursing protocols) are not in themselves constitutional violations, they can "'provide circumstantial evidence that a prison health care gatekeeper knew of a substantial risk of serious harm.'" *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016), *as amended* (Aug. 25, 2016) quoting *Mata v. Saiz*, 427 F.3d 745, 757 (10th Cir. 2005). And the choice not to inquire further into the nature of a prisoner's health problem can also show deliberate indifference: "An official may not escape liability by 'refus[ing] to verify underlying facts that [s]he strongly suspect[s] to be true.'" *Conley v. Birch*,

---

[4] Frisk referenced the prison nursing policy for "Musculoskeletal Pain" in her deposition but the policy for "Ankle/Foot Injuries" in her declaration in support of summary judgment. *See* Dkt. 54-2 and 68-6 for the policies. Under either policy, nurses are instructed to conduct a "physical examination" and either "check" or "observe" the site of injury.

[5] Frisk argues that Toolan's opinion should be disregarded because it is addressed toward a full Achilles *rupture* rather than partial tear. But as I discuss above, the parties do not dispute that Northern injured his Achilles to some extent. Toolan's report can reasonably read as explaining how to properly diagnose an Achilles injury.

796 F.3d 742, 747 (7th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 n.8 (1994)).

To be sure, members of a reasonable jury would not have to believe Northern's version of events, and even if they did, they might draw the inference that Frisk thinks they should draw: that she had good reason to believe that the injury was not particularly serious. But the jury could also believe Northern's version of events and draw a competing inference: that Frisk had good reason to think that the PRICE treatment was not working and that Northern had sustained a real injury, but that she chose to blow him off rather than examine him further. Because the disputed facts could support a conclusion that Frisk acted so far outside the scope of accepted standards as to show deliberate indifference on her part, I will deny her motion for summary judgment on this claim.[6]

b. **Treatment for pain**

Regardless of Frisk's treatment of the injury itself, Northern also claims that Frisk was deliberate indifferent for his complaints of pain. Prolonged severe pain is a serious medical need. *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1039-40 (7th Cir. 2012). At the January 25, 2013, appointment, Nurse Baumgart prescribed 400 mg of ibuprofen to be taken every six hours. Dkt., 54-1, at 11. Northern states that by the time of his appointment with

---

[6] Northern also contends that Frisk was deliberately indifferent to his Achilles tendon injury at the March 28, 2013 appointment because she failed to personally manipulate his ankle. Northern was not granted leave to proceed on a claim about this appointment. But even if Northern had, he fails to show how Frisk's decision to allow a nursing student to conduct the exam was such a substantial departure from accepted professional judgment as to demonstrate that Frisk did not base her decision on medical judgment. Toolan's report does not even mention the March 28 appointment. And Northern cites no authority for the proposition that opting to supervise an exam, rather than personally conduct one, constitutes deliberate indifference as matter of law. Moreover, as a result of this appointment, Northern was referred to Dr. Adler shortly thereafter, which does not support the inference that Frisk was deliberately indifferent to the injury at that point.

Frisk, he had run out of ibuprofen, was in severe pain, and told Frisk that he was in severe pain. According to Northern, Frisk told him to "tough it out" instead of giving him medication, even though the way canteen orders work meant that Northern would not be able to buy medication for about a week. Frisk disputes this version of events. This would usually be enough to create a genuine dispute of material fact regarding the pain aspect of Northern's claim.

But Frisk argues that Northern's failure to purchase ibuprofen from the canteen over a period of several months when he had ample funds to do so shows that he did not have a serious medical need. After all, why would someone who is languishing in severe pain choose not to purchase pain medication? Northern counters that he indeed purchased medication, just not from the canteen—he bartered for ibuprofen from another inmate.

This raises additional questions of fact about whether Northern was actually harmed by Frisk's actions. Perhaps if he already had ample access to medication, Frisk did not harm him by refusing to prescribe more. But at this point, I conclude that the motion for summary judgment should be denied on this claim, because a reasonable jury could conclude that Frisk disregarded Northern's report of severe pain even though she was in position to help him.

ORDER

IT IS ORDERED that:

1. Plaintiff Lawrence Northern's motion to amend the complaint, Dkt. 65, is GRANTED IN PART and DENIED IN PART, as discussed in the opinion above. Plaintiff's complaint is amended to include a medical malpractice claim against defendant Koreen Frisk.

2. Defendant's motion for summary judgment, Dkt. 51, is DENIED.

3. Defendant may have until March 30, 2017, to inform the court whether she intends to file dispositive motion on the medical malpractice claim. Once the court receives defendant's response, the clerk of court is directed to set a telephone conference before Magistrate Judge Stephen Crocker to set the schedule for the remainder of the proceedings in this lawsuit.

Entered March 16, 2017.

                                            BY THE COURT:

                                            /s/
                                            _____
                                            JAMES D. PETERSON
                                            District Judge